Charles R. Rondeau (SBN 164136)
charles@rondeaufirm.com
**THE RONDEAU LAW FIRM**
400 Continental Boulevard, Suite 600
El Segundo, California 90245
Telephone:  (877) 860-7377
Facsimile:   (877) 860-7371

Attorneys for Plaintiff MPK, INC., a California corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MPK, INC., a California corporation, | Case No. 2:19-cv-00422-DMG-JEM |
| Plaintiff, | [Before Hon. Dolly M. Gee] |
| v. | **PLAINTIFF'S FIRST AMENDED COMPLAINT FOR:** |
| BERNARDAUD N.A., INC., a New York corporation, | **1. BREACH OF WRITTEN CONTRACT** |
| Defendant. | **2. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE** |
| | **3. NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE** |
| | **4. OPEN BOOK ACCOUNT** |
| | **5. UNJUST ENRICHMENT** |
| | **6. ACCOUNTING** |
| | [Pursuant to F.R.C.P. Rule 15 (a)(2)] |

/ / /

/ / /

/ / /

/ / /

THE RONDEAU LAW FIRM
LOS ANGELES ◊ EL SEGUNDO

THE RONDEAU LAW FIRM
LOS ANGELES ◇ EL SEGUNDO

Pursuant to F.R.C.P. Rule 15 (a)(2) and a mutual agreement between Plaintiff MPK, INC., a California corporation, ("MPK") and Defendant BERNARDAUD N.A., INC. ("BERNARDAUD"), a New York corporation, MPK hereby files this First Amended Complaint and alleges as follows:

## GENERAL ALLEGATIONS

1.     MPK is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of California.

2.     Plaintiff is informed and believes and thereby upon alleges that BERNARDAUD, is, and at all times mentioned herein was, a corporation duly organized and existing under the laws of the State of New York.

3.     For purposes of this Complaint, MPK and BERNARDAUD will be referred to collectively as the "Parties".

## FIRST CAUSE OF ACTION
### BREACH OF WRITTEN AGREEMENT

4.     MPK refers to paragraphs 1 through 3 above and by this reference incorporates the same as though fully set forth herein.

5.     On or about November 14, 1997, MPK and BERNARDAUD, entered into a written contract entitled "Manufacturer's Representative Agreement" (the "1997 Agreement").  A true and correct copy of the 1997 Agreement is attached hereto as Exhibit "A".

6.     Pursuant to the 1997 Agreement, in exchange for MPK's services as its sales representative BERNARDAUD agreed to pay commissions to MPK calculated as follows: (1) five percent (5%) of net sales of "hotelware" to the Four Seasons Hotels in Newport Beach and Beverly Hills; and (2) ten percent (10%) of net sales from all other new customers for its line of "hotelware" to hotels, cruise lines, airlines, and restaurants.  All such commissions were to be paid to MPK no later than 45 days after each sales invoice was issued by BERNARDAUD to a purchaser (Exhibit "1", ¶ 5). The "sales territory" encompassed by the 1997 Agreement was

defined as being Southern California from Santa Barbara south and all of Las Vegas (Exhibit "1", ¶ 2). The contract term was for one (1) year with successive automatic renewals from year to year until terminated. (Exhibit "1", ¶ 4).

7.     On or about January 1, 1998, MPK and BERNARDAUD, entered into a written contract entitled "Manufacturer's Representative Agreement" (the "1998 Agreement"). A true and correct copy of the 1998 Agreement is attached hereto as Exhibit "B".

8.     Pursuant to the 1998 Agreement, in exchange for MPK's services as its sales representative, BERNARDAUD agreed to pay commissions to MPK calculated as follows: ten percent (10%) of net sales of dinnerware, gift-ware and gourmet food products. All such commissions were to be paid to MPK no later than 30 days after each sales invoice was issued by BERNARDAUD to a purchaser (Exhibit "1", ¶ 5). The "sales territory" encompassed by the 1998 Agreement was defined in the exactly the same manner as in the 1997 Agreement: Southern California from Santa Barbara south and all of Las Vegas (Exhibit "1", ¶ 2). Furthermore, as provided for in the 1997 Agreement, the contract term was for one (1) year with successive automatic renewals from year to year until terminated. (Exhibit "1", ¶ 4).

9.     MPK performed all conditions, promises and covenants on its part as required pursuant to the 1997 Agreement and the 1998 Agreement.

10.     During a period extending at least six (6) years prior to the date of the filing of the original complaint in this case, BERNARDAUD failed to pay Plaintiff full commissions regarding certain sales of BERNARDAUD merchandise as required under the 1997 Agreement and the 1998 Agreement and, therefore, BERNARDAUD has breached each of these written agreements.

11.     Although MPK has made repeated demands to BERNARDAUD for payment of all of the unpaid commissions due and owing to MPK pursuant to the 1997 Agreement and the 1998 Agreement, BERNARDAUD has refused to comply with such demand and, as such, the entirety thereof remains due, owing and payable.

THE RONDEAU LAW FIRM
LOS ANGELES ◊ EL SEGUNDO

12.    The aforementioned breach of the 1997 Agreement and the 1998 Agreement on the part of BERNARDAUD was a substantial factor in causing MPK's damages as further alleged herein.

13.    As a direct and proximate result of BERNARDAUD's breach of the 1997 Agreement and the 1998 Agreement, MPK has suffered damages the precise amount of which is to be determined at the time of trial.

14.    In addition, MPK is entitled to prejudgment interest upon all such damages at the rate according to the applicable law from the date of each unpaid commission payment became payable pursuant to the 1997 Agreement and the 1998 Agreement to the present and continuing.

**SECOND CAUSE OF ACTION**

**INTENTIONAL INTERFERENCE WITH**

**PROSPECTIVE ECONOMIC ADVANTAGE**

15.    MPK refers to paragraphs 1 through 14 above and by this reference incorporates the same as though fully set forth herein.

16.    Through many years of effort on its part, MPK had developed relationships with numerous parties within its "sales territory" as defined in the 1997 Agreement and the 1998 Agreement which resulted in economic benefit to MPK during the term of such agreements, including but not limited to:

(a)    In Las Vegas, Nevada: the Wynn and Encore hotels, the Cosmopolitan hotel, the Bellagio hotel, the Mirage hotel, the Cosmopolitan hotel, the Caesar's Palace hotel, the Spago restaurant, and the Cut restaurant; and

(b)    In Southern California: the Waldorf Astoria Beverly Hills hotel, the Rosemont Miramar Hotel, the Broad Museum and the Academy of Motion Pictures Arts and Sciences, the Spago restaurant, and the Cut restaurant.

17.    BERNARDAUD was aware of such relationships and was further aware of the fact these relationships did, in fact, result in economic benefit to MPK through the sales of BERNARDAUD merchandise.

THE RONDEAU LAW FIRM
LOS ANGELES ◊ EL SEGUNDO

THE RONDEAU LAW FIRM
LOS ANGELES ◊ EL SEGUNDO

18.     Nevertheless, beginning in 2013 and continuing until the end of its contractual relationship between MPK in May 2019, BERNARDAUD conducted a concerted pattern of conduct which interfered with MPK's existing relationships both in Las Vegas and in Southern California for the purposes of impeding and preventing MPK from procuring sales of BERNARDAUD merchandise within its "sales territory" as defined in the 1997 Agreement and the 1998 Agreement.  This pattern of conduct involved, principally: (i) making "sales calls" to customers within MPK's "sales territory" as defined in the 1997 Agreement and the 1998 Agreement with whom MPK had long-standing relationships without notifying MPK; and (ii) advising MPK not to have further contact with such customers.

19.     MPK is informed and believes that either BERNAUDAUD engaged in this pattern of conduct either: (i) for the specific purpose of disrupting MPK's relationships with such customers and of impeding and preventing MPK from deriving economic benefit from such relationships in the form of commissions from sales of BERNARDAUD merchandise; or, in the alternative, (ii) acted with the specific knowledge of, or was substantially certain of, the fact that this pattern of conduct would result in the disruption of MPK's relationships with such customers.

20.     As a result of the aforementioned conduct on the part of BERNARDAUD, MPK's relationships with numerous of its customers were disrupted thereby causing harm to MPK.

21.     The aforementioned conduct on the part of BERNARDAUD was a substantial factor in causing MPK's damages as further alleged herein.

22.     As a direct and proximate result of the aforementioned conduct on the part of BERNARDAUD, MPK has suffered damages the precise amount of which is to be determined at the time of trial.

23.     In addition, MPK is entitled to prejudgment interest upon all such damages at the rate according to the applicable law from the date of each unpaid commission payment required pursuant to the 1997 Agreement and the 1998

1  Agreement to the present and continuing.

2      24.    MPK is informed and believes, and thereon alleges, that

3  BERNARDAUD engaged in the aforementioned conduct maliciously and

4  deliberately in conscious disregard of MPK's rights and interests.

5      25.    As such, MPK is entitled to an award of punitive damages according to

6  applicable law in an amount to be determined at time of trial.

7  **THIRD CAUSE OF ACTION**

8  **NEGLIGENT INTERFERENCE WITH**

9  **PROSPECTIVE ECONOMIC ADVANTAGE**

10     26.    MPK refers to paragraphs 1 through 25 above and by this reference

11  incorporates the same as though fully set forth herein.

12     27.    BERNARDAUD engaged in the aforementioned conduct referenced in

13  Paragraph 17 above recklessly and/or negligently without exercising due regard for

14  the potential economic loss to MPK which was reasonably foreseeable due to the

15  disruption of the financially advantageous relationships between MPK and its

16  customers.

17     28.    As a result of such conduct on the part of BERNARDAUD, MPK's

18  relationships with numerous of its customers were disrupted.

19     29.    As a direct and proximate result of the aforementioned conduct on the

20  part of BERNARDAUD, MPK has suffered damages the precise amount of which is

21  to be determined at the time of trial.

22     30.    In addition, MPK is entitled to prejudgment interest upon all such

23  damages at the rate according to the applicable law from the date of each unpaid

24  commission payment required pursuant to the 1997 Agreement and the 1998

25  Agreement to the present and continuing.

26  / / /

27  / / /

28  / / /

THE RONDEAU LAW FIRM
LOS ANGELES ◊ EL SEGUNDO

-6-    Case No. 2:19-cv-00422-DMG-JEM

THE RONDEAU LAW FIRM
LOS ANGELES ◇ EL SEGUNDO

## FOURTH CAUSE OF ACTION

## OPEN BOOK ACCOUNT

31.    MPK refers to paragraphs 1 through 30 above and by this reference incorporates the same as though fully set forth herein.

32.    As result of the relationship between the Parties, numerous financial transactions occurred between MPK and BERNARDAUD over the course of such relationship regarding the commissions due and owing to MPK by BERNARDAUD pursuant to the 1997 Agreement and the 1998 Agreement.

33.    In the regular course of business, MPK and BERNARDAUD each maintained records of these transactions.

34.    The full amount of the unpaid commissions pursuant to the 1997 Agreement and the 1998 Agreement as alleged above is due and owing by BERNARDAUD to MPK.

35.    MPK is entitled to payment of all such unpaid commissions in an amount to be determined at time of trial.

36.    MPK is also entitled to prejudgment interest upon the full amount of such unpaid commissions at the rate according to the applicable law from the date of each unpaid commission payment required pursuant to the 1997 Agreement and the 1998 Agreement to the present and continuing.

37.    MPK is further entitled to attorneys' fees pursuant to applicable law.

## FIFTH CAUSE OF ACTION

## UNJUST ENRICHMENT

38.    MPK refers to and herein incorporates Paragraphs 1 through 37 as though fully set forth herein.

39.    BERNARDAUD has received the benefits of MPK's services as BERNARDAUD's sales representative as set forth above.

40.    In furnishing such services, MPK was not acting as a volunteer, and BERNARDAUD has accepted the benefits of MPK's services without reimbursing

MPK for the reasonable value of all such services.

41.    BERNARDAUD has been unjustly enriched by its receipt of, and it would be inequitable for BERNARDAUD to be allowed to retain the benefits of, all such services without reimbursement.

42.    MPK is entitled to payment by BERNARDAUD for the reasonable value of all unreimbursed services rendered to it by MPK.

43.    MPK is also entitled to prejudgment interest upon the full amount of the reasonable value of all unreimbursed services rendered at the rate according to the applicable law from the date of all such services were provided to the present and continuing.

## SIXTH CAUSE OF ACTION
## ACCOUNTING

44.    MPK refers to and herein incorporates Paragraphs 1 through 43 as though fully set forth herein.

45.    As a result of the relationship between the Parties and BERNARDAUD's failure to pay the full commissions due to MPK pursuant to the 1997 Agreement and the 1998 Agreement as alleged above, there is currently an amount of money due, owing and unpaid to MPK.

46.    The aforementioned amount cannot be ascertained without a full accounting of the sales invoices, debit and credits statements and commission payments for all of BERNARDAUD customers within "sales territory" as defined in the 1997 Agreement and the 1998 Agreement.

47.    MPK has made repeated demands that BERNARDAUD provide an accounting of all such transactions, however BERNARDAUD has failed and refused to render such an accounting.

48.    Upon provision of the demanded accounting, MPK is entitled to payment of all unpaid commissions due and payable by BERNARDAUD to MPK pursuant to the 1997 Agreement and the 1998 Agreement.

THE RONDEAU LAW FIRM
LOS ANGELES ◊ EL SEGUNDO

# PRAYER FOR RELIEF

WHEREFORE, MPK prays for judgment against BERNARDAUD as follows:

## AS TO THE FIRST THROUGH FOURTH CAUSES OF ACTION

1.    For an award of damages in the amount proven at time of trial;

2.    For prejudgment interest thereon at the rate according to applicable law from the date of each unpaid commission payment became payable pursuant to the 1997 Agreement and the 1998 Agreement to the present and continuing; and

3.    For all costs incurred by MPK in maintaining this case according to proof at time of trial.

## AS TO THE FIFTH CAUSE OF ACTION

1.    For the reasonable value of all unreimbursed services provided by MPK to BERNARDAUD;

2.    For prejudgment interest thereon at the rate according to applicable law from the date of each unpaid commission payment became payable pursuant to the 1997 Agreement and the 1998 Agreement to the present and continuing; and

3.    For all costs incurred by MPK in maintaining this case according to proof at time of trial.

## AS TO THE SIXTH CAUSE OF ACTION

1.    For an accounting of all of the aforementioned transactions between the Parties;

2.    For an award of the amount found to be due by BERNARDAUD to MPK as a result of such accounting; and

3.    For prejudgment interest thereon at the rate according to applicable law from the date of each unpaid commission payment became payable pursuant to the 1997 Agreement and the 1998 Agreement to

THE RONDEAU LAW FIRM
LOS ANGELES ◇ EL SEGUNDO

the present and continuing; and

4.    For all costs incurred by MPK in maintaining this case according to proof at time of trial.

**<u>AS TO ALL CAUSES OF ACTION</u>**

1.    For such other and further relief as the Court may deem just and proper.

Dated: February 17, 2023          THE RONDEAU LAW FIRM

By:   /s/ Charles R. Rondeau
      CHARLES R. RONDEAU
      Attorneys for Plaintiff MPK, INC.

EXHIBIT "A"

Dec 02 97 03:02p      MPK, INC. - REYNOLDS      714-486-0748      p.2
12/05/11   2:13
12/01/1997  17:58    7817427917       MARGARET L MOSES      NO.005   P02
                                                            PAGE  82

## MANUFACTURER'S REPRESENTATIVE AGREEMENT

This Agreement between Bernardaud N.A., Inc., whose address is 41 Madison Avenue, New York, New York, 10010 (the "Company"), and MPK, INC. whose address is c/o Mr. Kenneth J. Greenberg, MPK, INC., 7800 Santa Monica Blvd., Los Angeles, CA 90046 ("Agent"), is effective as of November 14, 1997.

1.  **Representation**:  Subject to the terms and conditions hereof, the Company hereby appoints Agent as its agent in the Territory for promoting and developing the sale of its Hotelware to the Hotel, Restaurant, Cruise line, and Airline trade ("the Product"), and Agent accepts such appointment from the Company.

2.  **Territory**:  The Territory shall include Southern California, from Santa Barbara south, and Las Vegas, Nevada.

3.  **Customer**:  A Customer is a client in the Territory who places orders for the Company's Product during the term of this Agreement.

4.  **Term**.  The term of this Agreement shall be for one year from the effective date hereof, and shall be automatically renewed for successive one year periods, unless written notice is given by either party to the other party at least thirty (30) days before the end of any such period, unless earlier terminated pursuant to paragraph 10.

5.  **Compensation**:  Subject to the provisions of this paragraph 5, Agent will be paid a commission as follows:

(a) equal to 5% of Net Sales it generates from the Four Seasons Hotels in Beverly Hills and in Newport Beach;

(b) equal to 10% of Net Sales it generates from new Customers, and existing customers not listed in paragraph 5 (a), above.  KW

The commission will be paid to Agent not more than forty-five (45) days after the date of the invoice.  Net Sales means the net amount of the invoice for each shipment of the Product after deduction for any allowances, returns, or defective goods, and net of freight and insurance charges.  No Commission shall be paid except on the Net Sales of Product actually shipped by the Company, and received, accepted, and paid for by the Customer.

1

Dec 02 97 03:03p      MPK, INC. – REYNOLDS          714-456-0748          p.3
12/05/11    21:18

17:58    2017617812              MARGARET L MOSES           NO.005   003
                                                            PAGE 03

6.  **Acceptance of Orders**:  All orders solicited shall be subject to acceptance by the Company, and the Company reserves the right, in its absolute discretion, to reject any order, or to cancel any order which has been accepted, for any reasonable cause, without liability to Agent or Customer.

7.  **Additional Obligations of Agent**:

(a)  Agent shall use its best efforts to promote and develop sales of the Product to the commercial trade, and shall solicit orders therefor throughout the Territory.

(b)  During the initial one year term of this Agreement, the minimum amount of sales which Agent will generate for the Product is $750,000.  If this performance goal is not met, Bernardaud has the option to terminate Agent upon fifteen (15) days written notice.

(c)  Agent will send to the Company's management, on a monthly basis, a detailed report of its activities and efforts on behalf of the Company, listing the employee responsible for the marketing and sale of the Product.

(d)  Agent will be responsible for all of its expenses including but not limited to all expenses related to marketing and selling the Product, taxes and insurance.

8.  **Additional Obligations of Company**:

(a)  The Company will provide Agent with documentation and with samples, which must be returned to the Company upon termination of this Agreement.

(b)  The Company's Vice President for Hotels and Restaurants, Mr. Dominique Millec, or his designee, will assist and supervise Agent in its activities for the Company.

9.  **Status of Agent**:  Except as expressly set forth herein, Agent is not an agent of the Company for any purpose whatsoever and has no right or authority to assume or create any obligation, express or implied, on behalf or in the name of the Company. Agent is an independent contractor and will submit all orders to the Company for acceptance or rejection.  It is expressly understood that the Company has no obligation to Agent or any of Agent's employees with respect to worker's compensation, unemployment insurance, life insurance, travel insurance, employee bonus plans, employee pension plans, group insurance, social security, withholding tax, or any other expense customarily granted by an employer with respect to an employee.

2

The Company shall not be responsible for any medical expenses of
any employee of Agent or for any illness or accidents sustained
by any employee of Agent while representing the Company under the
terms of this Agreement.

    10.  Termination:

    (a)  This Agreement may be terminated at any time by either
party for cause or for no cause upon thirty (30) days written
notice to the other party.

    (b)  Subject to paragraph 5, after termination Agent shall
be entitled to commissions on all purchase orders generated by it
which were received by the Company from a Customer prior to
termination of this Agreement.

    11.  Assignment:  This Agreement shall not be assignable by
Agent without the prior written consent of the Company.

    12.  Governing Law:  This Agreement shall be governed and
construed in accordance with the laws of the State of New York
without regard to its laws and rules governing conflicts of laws.

    13.  Notices:  All notices and communications made pursuant
to this Agreement shall be in writing, by certified mail, return
receipt requested, and shall be sent to the other party at the
addresses set forth above, or at such other address as one party
may from time to time notify the other party in writing.

IN WITNESS WHEREOF, the parties hereto have executed this
Agreement as of the date first above written.

BERNARDAUD N.A., INC.                      MPK, INC.

By: _____         By: _____
    Dominique Millee                     Kenneth J. Greenberg
    Vice President                       President
    Hotels/Restaurants

                              3

# EXHIBIT "B"

## MANUFACTURER'S REPRESENTATIVE AGREEMENT

This Agreement between Bernardaud N.A., Inc., whose address is 41 Madison Avenue, New York, New York, 10010 (the "Company"), and MPK, Inc., whose address is 33852 Del Obispo, No. 37, Dana Point, CA 92629-2112 ("Agent"), is effective as of 1 / 1 / 1998.

1. Representation:  Subject to the terms and conditions hereof, the Company hereby appoints Agent as its agent in the Territory for promoting and developing the sale of its porcelain dinnerware, giftware, and gourmet food products ("the Product"), and Agent accepts such appointment from the Company.

2. Territory:  The Territory shall include Southern California from Santa Barbara County south, and designated accounts in Las Vegas Nevada.

3. Customer:  A Customer is a client in the Territory who places orders for the Company's Product during the term of this Agreement.

4. Term:  The term of this Agreement shall be for 12 months from the effective date hereof, and shall be automatically renewed for successive 12 month periods, unless written notice is given by either party to the other party at least thirty (30) days before the end of any such period, or unless earlier terminated pursuant to paragraph 10.

5. Compensation:  Subject to the provisions of this paragraph 5, Agent will be paid a commission of ten percent (10%) of net sales.
The commission will be calculated on Net Sales and paid to Agent not more than thirty (30) days after the end of the month in which the commission was earned.  Net Sales means the net amount of the invoice for each shipment of the Product after deduction for any allowances, returns, or defective goods, and net of freight and insurance charges.  No commission shall be

1

paid except on the Net Sales of Product actually shipped by the Company, and received, accepted, and paid for by the Customer.

6. <u>Acceptance of Orders</u>:  All orders solicited shall be subject to acceptance by the Distribution Committee of the Company, and shall be subject to Bernardaud's standard terms of sale, as set forth in the price list and on the order form.  The Distribution Committee can in its sole discretion reject any order, or cancel any order which has been accepted, without liability to Agent or Customer.  The Distribution Committee can also, in its sole discretion, authorize the opening or the closing of any account.

7. <u>Additional Obligations of Agent</u>:

(a) Agent shall use his/her best efforts to promote and develop sales of the Product, and shall solicit orders therefor throughout the Territory;

(b)  Agent shall train and motivate store personnel, ensure that the Product is appropriately and prominently displayed, and monitor and promote activities by store personnel to market and sell the product;

(c)  During the term of this Agreement, Agent shall not represent any products which are or may be competitive with the Product, except with the prior written approval of an officer of the Company which approval shall not be reasonably withheld;

(d)  Agent will provide detailed reports of his/her activities and efforts on behalf of the Company as reasonably required by the Company;

(e) Agent shall quote only such prices and terms as have been agreed to by the Company.

(f) Agent will be responsible for all of his/her expenses including but not limited to all expenses related to marketing and selling the Product, taxes and insurance.

(g) Agent shall furnish a certificate of insurance to the Company evidencing that public liability and property damage insurance as required by the laws of the state in which the Agent resides, is in effect for the term of this Agreement.

8.  <u>Additional Obligations of Company</u>:

The Company will provide Agent with documentation and with samples (the "Material") in an appropriate amount to be determined in the sole discretion of the Company.  Other than documentation intended to be provided and actually provided to the Customer for its use, the Material remains the exclusive property of the Company, and must be returned to the Company upon termination of this Agreement.

9.  <u>Status of Agent</u>:  Except as expressly set forth herein, Agent is not an agent of the Company for any purpose whatsoever and has no right or authority to assume or create any obligation, express or implied, on behalf or in the name of the Company. Agent is an independent contractor and will submit all orders to the Company for acceptance or rejection.  It is expressly understood that the Company has no obligation to Agent with respect to worker's compensation, unemployment insurance, life insurance, travel insurance, employee bonus plans, employee pension plans, group insurance, social security, withholding tax, or any other expense customarily granted by an employer with respect to an employee.  The Company shall not be responsible for any medical expenses of Agent or for any illness or accidents sustained by Agent while representing the Company under the terms of this Agreement.

10.  <u>Termination</u>:

(a)  This Agreement may be terminated at any time by either party for cause or for no cause by serving written notice thereof on the other party no less that thirty (30) days before the date fixed in said notice for such termination.

(b)  Subject to paragraph 5, after termination Agent shall be entitled to commissions on all purchase orders generated by him/her which were received by the Company from a Customer prior to termination of this Agreement.

11.  <u>Assignment</u>:  This Agreement shall not be assignable by Agent without the prior written consent of the Company.

12.  <u>Governing Law</u>:  This Agreement shall be governed and construed in accordance with the laws of the State of New York without regard to its laws and rules governing conflicts of laws.

13.  <u>Notices</u>:  All notices and communications made pursuant

3

to this Agreement shall be in writing, by certified mail, return receipt requested, and shall be sent to the other party at the addresses set forth above, or at such other address as one party may from time to time notify the other party in writing.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

BERNARDAUD N.A., INC.

By: _____        GREGORY R SWIFT
                                              (name)

MPK, Inc.
By: _____ Pres.        KENNETH J. greenberg
                                              (name)

4

**THE RONDEAU LAW FIRM**
LOS ANGELES ◊ EL SEGUNDO

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and am not a party to the above-captioned action. My business address is 400 Continental Boulevard, Suite 600, Los Angeles, California, 90245.

On February 17, 2023, I served the following document(s) entitled: **PLAINTIFF'S FIRST AMENDED COMPLAINT** on the following interested parties as follows:

| | |
|---|---|
| Nick S. Pujji, Esq.<br>Emma Moralyan, Esq.<br>DENTONS US LLP<br>601 South Figueroa Street, Suite 2500<br>Los Angeles, California 90017<br>(213) 623.9300 – Telephone<br>(213) 623.9924 – Facsimile<br>nick.pujji@dentons.com – email<br>emma.moralyan@dentons.com – email | *Attorney for Defendants*<br>BERNARDAUD N.A., INC.<br>GEORGE KAKATY, and<br>CORINNE OATS |

[✓]  **BY ELECTRONIC SERVICE:** Pursuant to prior mutual consent of the parties permitting electronic service of documents in the above-captioned matter as provided for in F.R.C.P. Rule 5 (B)(2)(E), I served the above-described documents upon the identified recipients via electronic service to the email address(es) listed in the service caption above. A true and correct copy of transmittal will be produced if requested by any party or the court.

[✓]  **FEDERAL:** I declare that I am a member of the bar of this court and served the above-referenced document(s). EXECUTED on February 17, 2023, at El Segundo, California.

Charles R. Rondeau
    Typed or printed name

       /s/ Charles R. Rondeau
          Signature